UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YIYU LIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CGIT SYSTEMS, INC., )<br>)<br>Defendant. )<br>) | C.A. 20-cv-11051 |

## **COMPLAINT**

### PARTIES

1. Yiyu Lin ("Plaintiff") is an individual residing at 8 Crab Apple Lane Franklin, Massachusetts

2. CGIT Systems, Inc. ("Defendant") is a foreign corporation with a principal place of business at 3100 West 7th Street, Suite 500, Fort Worth, Texas.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because at all relevant times Defendant has engaged in substantial business activities in Massachusetts.

5. Venue is proper because this action is filed in the judicial district in which a substantial part of the events giving rise to this action occurred.

### FACTS

6. Plaintiff is a 55-year-old Chinese-American with a history of high blood pressure.

7. Defendant does business as AZZ High Voltage Bus Systems and is an indirect, wholly-owned subsidiary of AZZ, Inc., a publically traded provider of galvanizing, welding solutions, specialty electrical equipment, and highly engineered services.

8. Defendant hired Plaintiff on April 1, 2005 as a Senior Engineer. Plaintiff worked in that role for three and a half years, until his title was changed in October 2008 to Senior Project Engineer.

9. In 2018, Plaintiff was promoted to the position of Senior Project Engineer/Team Lead. In this role, Plaintiff was responsible for carrying out technical execution of projects in the design and manufacture of high voltage power transmission systems. The responsibilities of Plaintiff's position included: (a) leading and mentoring a team of Engineers, Designers and Drafters; (b) reviewing quotes, proposals, and purchase orders to identify design requirements and ensure technical and pricing accuracy; (c) performing design calculations and developing design schedules for projects; (d) coordinating project design activities; (e) interfacing with customers concerning design comments; (f) reviewing and editing drawings to ensure compliance with design requirements; (g) identifying changes in project scope and initiating change orders; and (h) participating in other aspects of the design process to ensure accuracy, completeness and timeliness.

10. In his role as Senior Project Engineer/Team Lead, Plaintiff worked with little or no supervision, completing most projects either on his own or with a small team under his supervision.

11. During Plaintiff's 15 years with Defendant, the reviews of his work were always positive and he never received a negative performance review. In fact, Plaintiff was recognized as one of the best engineers in his department.

12. Plaintiff's history of high blood pressure was made known to Defendant.

13. Plaintiff also lives with his 81-year-old mother who has heart disease (with a pace maker installed), high blood pressure and diabetes, which was made known to Defendant.

14. For the majority of Plaintiff's tenure with Defendant, he reported to Defendant's Massachusetts location, most recently in Medway, Massachusetts.

15. Following Massachusetts Governor Charlie Baker's order closing non-essential businesses due to the novel Coronavirus ("COVID-19") pandemic, Plaintiff began working from home on March 16, 2020 after obtaining verbal consent from his Manager.

16. While performing work from his home, Plaintiff (a) participated in daily morning engineering status meetings through Webex/Skype; (b) participated in internal project status meetings through Webex; (c) participated in weekly project status meetings concerning ongoing projects; and (d) executed and completed all tasks through the Company's VPN.

17. On March 17, 2020, Defendant addressed COVID-19 for the first time. Plaintiff's General Manager communicated to the engineering department during a meeting that there were no changes to department policies and procedures because "corporate" was preventing him from implementing safety changes.

18. After the meeting, Defendant's Safety Manager confirmed that sick employees had been coming into work, but that Defendant could not force people to take sick days if they are sick and that Human Resources was "keeping track" of sick employees.

19. Two days later, Defendant's Director of Human Resources communicated to employees that COVID-19 was "not a super-bug" and that a vaccine would be developed and "life will go on."

20. On March 25, 2020, Plaintiff's General Manager instructed that all employees working from home must report to Defendant's office location for work on March 27, 2020.

21. Plaintiff's General Manager communicated that any employee who wanted to take a leave of absence or telecommute must submit a form and await approval from their manager, general manager and human resources.

22. Plaintiff communicated to his Manager that he wanted to comply with the Governor's stay at home order by working from home, which at the time extended until April 7, 2020. This was because Plaintiff was concerned about "social distancing" in Defendant's office location, particularly given his pre-existing health condition and exposure to his mother who was in a vulnerable population with respect to COVID-19.

23. Plaintiff submitted a request to continue to work from home on the form required by Defendant on March 26, 2020.

24. While the request was processing, Plaintiff asked if he was required to report to Defendant's office location on March 27, 2020. When he was told that he was required to do so, Plaintiff asked to take a "floating holiday." Plaintiff's Manager responded "Are you kidding me?" After Plaintiff reminded his Manager of the federal guidance concerning COVID-19 with respect to vulnerable persons, Defendant later approved the floating holiday for March 27, 2020.

25. Plaintiff offered to change the floating holiday on March 27, 2020 to "work from home" in order to attend to some potential work. Plaintiff's Manager stated "it cannot be work from home" and declined Plaintiff's offer to work rather than take the day off.

26. Plaintiff's health concerns were well founded, as on March 28, 2020, an employee of Defendant reported that their significant other and two roommates tested positive for

COVID-19. Defendant did not do anything to address this or take extra cleaning and disinfection steps.

27. On March 28, 2020, Defendant informed Plaintiff that his request to work from home had been denied and that he was required to work in Defendant's office location effective March 30, 2020.

28. During the same time, two other engineers in Plaintiff's department were allowed to work from home pursuant to their requests.

29. On March 28, 2020, Plaintiff entered his request for vacation in Defendant's Oracle system in order to take vacation until April 3, 2020; the request was never approved.

30. On March 28, 2020, Plaintiff's General Manager emailed Defendant's Director of Human Resources to inform him that he had denied Plaintiff's request to work from home, that Plaintiff was "pushing back," and "Let's see where we are on Monday [March 30th]." Defendant's Director of Human Resources responded "I think by Tuesday [March 31st] you will be down at least one person. [Plaintiff] is helping us document his termination." Plaintiff's General Manager responded by asking if a leave of absence was an option for Plaintiff and stating that Plaintiff "does not understand the results of his position."

31. On March 28, 2020, Plaintiff asked to use sick time, but was told that he only had 8 hours of paid sick time left. Plaintiff was told that he could use his last paid sick day on March 30, 2020, but must report to Defendant's office location the following day. Defendant did not offer Plaintiff the option to take unpaid leave.

32. On March 30, 2020, Defendant's President told Plaintiff by email that he needed to report to Defendant's office location on March 31, 2020 to continue his employment. In the

        same email, he stated that "we have no cases of COVID-19 in our people or their families with close monitoring."

33. In response, Plaintiff reiterated the reasons for his request to work from home, namely that he was 55-years-old with a long-time high blood pressure medical problem, and that he lived with his mother, who was subjected to high risk of COVID-19.

34. Plaintiff also noted that he had been working from home for the past few weeks and had established that all of his work could be handled remotely without any problem.

35. Despite this, Plaintiff's employment with Defendant was terminated that day. The reason listed for his termination was "job abandonment."

36. Plaintiff's Manager stated to other employees of Defendant that he "needed to make an example" of Plaintiff and that Defendant wouldn't permit people to take sick or vacation time because they were concerned about coming in to work in Defendant's office location due to COVID-19.

37. Again, Plaintiff's health concerns were well founded. On April 1, 2020, 5 of Defendant's employees were out sick. The next day, it was reported that the wife of an employee tested positive for COVID-19. The following day, an employee of Defendant tested positive for COVID-19.

38. On April 3, 2020, all employees of Defendant were told to work from home immediately until at least April 7, 2020. Even though he was terminated only 3 days before, Plaintiff was not contacted by Defendant concerning his job, reconsideration of his telecommute request or rescinding his termination.

39. On May 11, 2020, Plaintiff filed a Charge of Discrimination with the Commonwealth of Massachusetts Commission Against Discrimination ("MCAD").

40. Plaintiff has been allowed by MCAD to withdraw his Charge from MCAD in order to file a private right of action in civil court.

41. On May 11, 2020, Plaintiff filed a complaint with the Office of the Attorney General's Fair Labor Division.

42. On May 15, 2020, the Office of the Attorney General's Fair Labor Division issued a letter informing that Plaintiff was authorized to pursue the matter through a private civil lawsuit.

43. Plaintiff has exhausted all administrative remedies prior to filing this lawsuit.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF G.L. c. 151B

44. Plaintiff repeats and realleges paragraphs 1-43 above as if fully set forth fully herein.

45. Plaintiff has timely satisfied all of the prerequisites to suit under G.L. c. 151B by filing a Charge of Discrimination at the MCAD and being permitted to withdraw his Charge from the MCAD in order to file a private right of action in civil court.

46. Defendant discriminated against Plaintiff because of his disability in violation of G.L. c. 151B.

47. Defendant discriminated against Plaintiff because of the disability of someone he is associated with in violation of G.L. c. 151B.

48. Defendant failed to offer Plaintiff a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of his job.

49. Defendant failed to engage in the interactive process in any meaningful way when Plaintiff requested an accommodation.

50. As a result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## COUNT II
## AGE DISCRIMINATION IN VIOLATION OF G.L. c. 151B

51. Plaintiff repeats and realleges paragraphs 1-50 above as if fully set forth fully herein.

52. Plaintiff has timely satisfied all of the prerequisites to suit under G.L. c. 151B by filing a Charge of Discrimination at the MCAD and being permitted to withdraw his Charge from the MCAD in order to file a private right of action in civil court.

53. Defendant discriminated against Plaintiff because of his age in violation of G.L. c. 151B.

54. As a result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## COUNT III
## RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF G.L. c. 151B

55. Plaintiff repeats and realleges paragraphs 1-54 above as if fully set forth fully herein.

56. Plaintiff has timely satisfied all of the prerequisites to suit under G.L. c. 151B by filing a Charge of Discrimination at the MCAD and being permitted to withdraw his Charge from the MCAD in order to file a private right of action in civil court.

57. Defendant discriminated against Plaintiff because of his race/national origin in violation of G.L. c. 151B.

58. As a result thereof, Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## COUNT IV
## RETALIATION IN VIOLATION OF M.G.L. c. 149, § 148C.

59. Plaintiff repeats and realleges paragraphs 1-58 above as fully set forth fully herein.

60. Plaintiff has timely satisfied all of the prerequisites to suit under G.L. c. 149, § 148C.

61. Defendant retaliated against Plaintiff by terminating his employment as a result of his use of earned sick time.

62. Defendant's actions violated G.L. c. 149 § 148C.

63. As a result thereof, Plaintiff suffered and continues to suffer loss of income and loss of benefits.

WHEREFORE, Plaintiff, Yiyu Lin, respectfully requests that this Honorable Court:

A. Enter judgment in his favor and against Defendant on all Counts;

B. Award Plaintiff compensatory damages, including, but not limited to, back pay, front pay, and lost benefits, all with interest at the statutory rate;

C. Award Plaintiff emotional distress damages, with interest at the statutory rate;

D. Award Plaintiff liquidated/punitive damages;

E. Award Plaintiff treble damages;

F. Award Plaintiff attorneys' fees and costs; and

G. Order such further relief as the Court deems just and proper.

**JURY CLAIM**

Plaintiff demands a jury trial on all claims so triable.

                                            Respectfully submitted,
                                            **YIYU LIN**,
                                            By his attorney,

                                            /s/Mark D. Szal
                                            Mark D. Szal, BBO# 667594
                                            SZAL LAW GROUP LLC
                                            6 Liberty Square #330
                                            Boston, Massachusetts 02109
                                            Telephone:  (617) 830-2494
Dated:  June 3, 2020                      mark@szallawgroup.com