UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YIYU LIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.: 1:20-CV-11051-MBB |
| CGIT SYSTEMS, INC. | ) |
| | ) |
| Defendant | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND III
<u>OF THE COMPLAINT</u>**

Defendant CGIT Systems, Inc. ("CGIT") moves this Court to dismiss Counts I, II, and III for failure to state a claim. Plaintiff was denied a request to work from home, and subsequently terminated for job abandonment when he refused to return to the office. In response, Plaintiff has essentially thrown multiple claims based on differing theories of discrimination "against the wall" in the hopes that one sticks. Although Plaintiff may feel that he was treated unfairly, the factual and legal bases do not exist for his various claims of discrimination in violation of M.G.L. c. 151B.

As is set forth in greater detail below, Plaintiff has failed to sufficiently plead that qualifies as a "handicapped" person under M.G.L. c. 151B and, further, his claim for "associational" disability discrimination does not have a basis in law; therefore, Count I of the Complaint should be dismissed. Plaintiff has also failed to plead essential elements of age and race/national origin discrimination claims under M.G.L. c. 151B; therefore, Counts II and III should be dismissed.

**RELEVEANT FACTUAL AND PROCEDURAL BACKGROUND**

CGIT provides galvanizing, welding solutions, specialty electrical equipment, and highly engineered services to its customers. (Complaint, ¶ 7). It is based in Medway, Massachusetts. Plaintiff was hired as an engineer at CGIT in April 2005. (¶ 8). In 2018, Plaintiff was promoted to the position of Senior Engineer/Team Lead. (¶ 9). Plaintiff specifically worked on the design and manufacture of high voltage power transmission systems, and he was responsible for, among other things, managing a team of engineers and designers, coordinating project design activities, and interfacing directly with customers regarding design issues. (¶ 9). Plaintiff alleges that, during his 15 years with CGIT, his reviews were always positive and that he was recognized by CGIT as one of the best engineers in his department. (¶ 11).

Plaintiff alleges that he has a "history of high blood pressure" that was "made known" to CGIT. (¶ 12). Other than his alleged diagnosis of high blood pressure, Plaintiff makes no further factual allegations regarding his condition, including no information regarding his history, his symptoms, his limitations (if any), his restrictions (if any), his medication (if any), his treatment (if any), or how this alleged condition affects his work or his life. Nor does Plaintiff describe what specifically was "made known" to CGIT regarding his high blood pressure, or when it was made known.[1]

When COVID-19 initially hit Massachusetts, Plaintiff alleges that he received permission from his manager to temporarily work from home for a brief period. (¶ 15). Plaintiff alleges that on March 25, Plaintiff's general manager instructed that all employees who had been working from home must report back to work at CGIT's offices beginning on March 27 or else submit an

---

[1] Plaintiff also alleges that he is 55 years old and a Chinese-American but, as is set forth in Sections 2 and 3 below, Plaintiff does not identify any facts whatsoever that could support a finding that CGIT had any discriminatory animus toward him on account of those two factors.

application for permission to continue to work from home. (¶ 20-21). Plaintiff submitted a request to continue to work from home, alleging that he told his manager he wanted to continue to work from home because he was "concerned about social distancing", particularly given his high blood pressure. (¶ 22). Plaintiff also alleges that he was concerned about exposing his mother to COVID-19, who he is 81-years old with various underlying health conditions. (¶ 22). Plaintiff's request to indefinitely work from home was denied, but he was permitted to take a "floating holiday" on Friday, March 27, and to use his one remaining sick day on Monday, March 30. (¶ 24. 27, 31).

On March 30, Plaintiff alleges that he was told by his manager that he had to report to the office on March 31 in order to continue his employment. (¶ 32). In response, Plaintiff alleges that he reiterated the reasons for his earlier request to work from home – his high blood pressure and his mother's health issues – in an apparent indication that he did not intend to show up to work the following day. (¶ 33). When Plaintiff did not show up to the office on March 31, he was terminated for "job abandonment". (¶ 35).

Plaintiff brings the instant action claiming: (Count I) that he was discriminated against based on his and his mother's alleged disabilities in violation of M.G.L. c. 151B when CGIT denied him the accommodation of working from home; (Count II) that he was discriminated against by CGIT on the basis of his age in violation of Chapter 151B; (Count III) that he was discriminated against by CGIT on the basis of his race/national origin in violation of Chapter 151B; and (Count IV) that CGIT retaliated against him in violation of M.G.L. c. 149, § 148C by

terminating him as a result of his use of earned sick time.[2] CGIT has moved to dismiss Counts I, II, and III pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[3]

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) looks to whether a complaint's factual allegations set forth "a plausible claim upon which relief may be granted." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that end, Rule 12(b)(6) weeds out cases that do not warrant subjecting the defendant to the expensive and laborious discovery phase of litigation because, even taking the allegations in the complaint as true, "the plaintiff could never win." *Foley*, F.3d at 72. A complaint with "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a

---

[2] Plaintiff alleges that he filed charges against CGIT with the Massachusetts Commission Against Discrimination ("MCAD") on May 11, 2020. (¶ 39). He also alleges that he received permission from the MCAD to withdraw his charge and file this action in court prior to the expiration of the 90-day period. (¶ 40). Plaintiff further alleges that he filed a complaint with the Office of the Attorney General's Fair Labor Division, which issued a letter authorizing him to pursue this matter through private civil lawsuit. (¶¶ 41-42). Plaintiff has not provided documentary evidence of the MCAD permission or the Attorney General's right to sue letter. While CGIT must accept Plaintiff's allegations as true at this pleading stage, CGIT reserves its right to move for dismissal of Plaintiff's complaint to the extent it subsequently comes to light that Plaintiff did not actually exhaust his administrative remedies prior to bringing this action.
[3] Although CGIT denies and disputes that it has violated M.G.L. c. 149, § 148C as alleged in Count IV of the Complaint, and it fully intends to defend against such claim, CGIT's Motion to Dismiss does not address that count. Dismissing Counts I, II, III while Count IV remained would still serve judicial economy and efficiency, however, because Plaintiff's claim that he was terminated in retaliation for using earned sick time is different and significantly more narrow than his claims of discrimination based on disability, age, and race/national. Far fewer legal issues would have to be addressed by the parties and the Court should only Count IV remain, and discovery would be much more focused without the discrimination claims, which often involve broad discovery into a defendant's employment practices and other employees. As set forth in this Memorandum, Plaintiff's discrimination claims do not have sufficient merit to warrant that burdensome discovery.

motion to dismiss. *Iqbal*, 556 U.S. at 678. As set forth below, Plaintiff's Complaint fails to allege sufficient factual basis to support plausible claims for relief in Counts I, II, and II; therefore, those counts should be dismissed.

**1.      Plaintiff has failed to state a claim for disability discrimination under M.G.L. c. 151B; therefore, Count I of the complaint should be dismissed.**

In Count I of the Complaint Plaintiff brings a claim for disability discrimination pursuant to M.G.L. c. 151B based on two distinct theories. One, that CGIT discriminated against him because of his alleged high blood pressure; and, two, that CGIT discriminated against him on the basis of his mother's various alleged health conditions. For the reasons set forth below, these claims fail.

*(A) <u>Plaintiff has failed to plead sufficient facts to establish that he qualifies as 'handicapped' under Chapter 151B; therefore, his 'direct' claim of disability discrimination should be dismissed</u>.*

In Count I of the Complaint, Plaintiff alleges that CGIT discriminated against him because of his alleged high blood pressure when it refused to grant him the accommodation of working from home. (¶ 48). In order to successfully plead a *prima facie* case of disability discrimination under M. G. L. c. 151B, § 4(16), a plaintiff must allege facts sufficient to support that: (1) he was handicapped, (2) he was capable of performing the essential functions of the job with reasonable accommodations, (3) he was subject to an adverse employment action and (4) the position remained open after his termination and the employer sought to fill it. *City of New Bedford v. Massachusetts Comm'n Against Discrimination*, 440 Mass. 450, 461-62 (2003); *Beal v. Bd. of Selectmen of Hingham*, 419 Mass. 535, 541 (1995). Here, Plaintiff has failed to allege facts sufficient to establish that he meets the definition of 'handicapped' under G. L. c. 151B; therefore, he cannot establish a *prima facie* case and his claim of disability discrimination should be dismissed.

The only 'handicap' that Plaintiff alleges to have is high blood pressure.  The Supreme Judicial Court has made clear that "[n]ot all physical or mental impairments constitute a 'handicap' under the Massachusetts antidiscrimination statute."  *City of New Bedford*, *supra* at 462; *Banks v. Hallsmith-Sysco Food Services*, 72 Mass. App. Ct. 1103 (2008) (Rule 1:28) ("Not every medical condition is entitled to protection under our antidiscrimination laws.").  In order to determine whether a plaintiff qualifies as 'handicapped' under the statute, Massachusetts courts apply a three-step analysis.  *Id.* at 463.  First, the court considers whether a plaintiff's condition constitutes a mental or physical 'impairment.'  *Id.*  Second, the court determines whether the life activity curtailed by the impairment constitutes a 'major life activity' as defined in c. 151B, § 1 (20), and its accompanying regulations.  *Id.*  Third, the court determines whether the impairment "*substantially limited* the major life activity."  *Id.* (citation omitted) (emphasis in original).  Under this framework, it is not enough to merely allege the existence of an impairment, "[r]ather, those seeking [G. L. c. 151B] protection must offer evidence that 'the extent of the limitation [caused by their impairment] in terms of their own experience … is substantial.'"  *Id.* (quoting *Carroll v. Xerox Corp.*, 294 F.3d 231 (1st Cir. 2002), quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002)).

Here, while CGIT will concede the first two prongs of the analysis solely for the purposes of this motion, Plaintiff's claim fails because he has not alleged, even in conclusory fashion (which would not be sufficient), that his high blood pressure "substantially limited" a "major life activity."  *See* M. G. L. c. 151B, § 1(20) (defining "major life activities" as "functions, including, but not limited to, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.").  In *Faiola v. APCO Graphics, Inc.*, 629 F. 3d 43 (1st Cir. 2010), the plaintiff brought a disability discrimination claim under c. 151B,

alleging that she was denied a reasonable accommodation and ultimately terminated because of her high blood pressure.  Specifically, the plaintiff alleged that her employer denied her request to be excused from air travel, which she claimed put her at risk due to her high blood pressure.  In concluding that the plaintiff was unable to demonstrate that she was 'handicapped' under the statute, the First Circuit noted that "[a]lthough [the plaintiff] peppers her briefs with her symptoms and diagnoses in an attempt to prove disability, '[i]t is insufficient for individuals … to merely submit evidence of a medical diagnosis of an impairment' to prove a substantial limitation." *Id.* at 48 (quoting *Toyota, supra* at 198).  The court further noted that there were no facts to suggest that the plaintiff was under any actual restrictions or that flying actually did put her at increased risk, and "the supposedly substantial nature of her impairment is undercut by her ability to perform 'all the essential aspects of [her] job…'" *Id*. at 48.

In *Banks v. Hallsmisth-Sysco Food Services*, 72 Mass. App. Ct. 1103 (2008) (Rule 1:28) the Massachusetts Appeals Court also upheld summary judgment against a plaintiff claiming that he was terminated on the basis of his high blood pressure.  The Appeals Court noted that a "mere medical diagnosis" was not enough to qualify as "handicapped", and that "an employee must show, by reference to his own experience, that the extent of the limitation caused by his impairment is substantial." *Id.* at *1.  "In this context, a substantial limitation is one that has a considerable and more than minor impact on an activity that is central to daily life." *Id.* at *2.  The Appeals Court found that the plaintiff's dietary restrictions as a result of his high blood pressure did not rise to a sufficiently severe level, and that the plaintiff was not sufficiently restricted with respect to his ability to work: "[t]o the contrary, he maintains at all times, he performed his job duties in a competent and professional manner." *Id.* at *2-3.

Just as in *Faiola* and *Banks*, Plaintiff has failed to establish that his high blood pressure amounts to a 'handicap' under Chapter 151B.  Plaintiff does not describe *any* limitations to his life as a result of his high blood pressure, much less a *substantial limitation* to a *major life function*.  His high blood pressure in no way restricts his ability to do his job – to the contrary, Plaintiff alleges that he was always able to perform his job and his reviews were always positive. (¶¶ 9-11); *See Faiola*, *supra* at 48 ("…the supposedly substantial nature of her impairment is undercut by her ability to perform 'all the essential aspects of [her] job…'"); *Banks*, *supra* at *2-3.  Plaintiff alleges that he had concerns about social distancing at work, "particularly given his pre-existing health condition", but he provides no details regarding his alleged condition, points to no evidence that he is under any sort of restrictions or doctor's orders, nor does he set forth any facts to support that his particular condition actually placed him at a significantly increased risk of severe illness from COVID-19.[4]  The law is clear that simply identifying a health condition without more is not sufficient to plead a *prima facie* case of disability discrimination under Chapter 151B.  *Faiola*, *supra* at 48; *Banks*, *supra* at *1.  Because the Plaintiff has not set forth sufficient facts demonstrating that he is substantially limited with respect to a major life function, he has not pled a *prima facie* case and his claim should be dismissed.

---

[4] Plaintiff does not allege any details regarding his condition or cite any support for the fact that his alleged impairment puts him at significant risk.  Plaintiff alleges that he "reminded" his manager at one point regarding the "federal guidance concerning COVID-19 with respect to vulnerable persons" (¶24), but he does not allege that he is such vulnerable person or allege any facts that could support that conclusion. For reference, high blood pressure alone is not identified on the CDC's list of pre-existing conditions that put people at higher risk of severe illness from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

### (B) <u>Plaintiff's 'associational' discrimination claim must fail because such claims are not recognized in the reasonable accommodation context.</u>

Plaintiff also attempts in Count I to make a so-called 'associational' discrimination claim, alleging that CGIT discriminated against him on the basis of his mother's alleged disability. Specifically, Plaintiff alleges that he requested to work from home because his mother is in "a vulnerable population with respect to COVID-19" (Complaint, ¶ 22), and that CGIT denied that accommodation. While the Supreme Judicial Court recognized associational discrimination as a valid cause of action in 2013, it did not do so where a plaintiff is seeking a reasonable accommodation due to his relation's alleged disability; therefore, Plaintiff's claim does not exist as a matter of law. *See Flagg v. Alimed*, Inc. 466 Mass. 23, 32 fn. 18 (2013) (concluding that 'associational' discrimination is a valid cause of action but expressly limiting that finding: "…we have no occasion to consider whether an employee with a handicapped spouse himself is entitled to reasonable accommodation on account of his spouse's condition; that issue is not raised in this case.").

*Flagg v. Alimed* is the 2013 SJC case that officially recognized 'associational' discrimination as a valid cause of action in Massachusetts. The plaintiff in *Flagg* alleged that he was terminated specifically so that his employer could avoid paying for the medical care of his wife who was battling a brain tumor. *Id.* at 25-26. In finding that the plaintiff had a valid claim under Chapter 151B, the SJC found that, "[w]hen an employer subjects and otherwise satisfactory employee to adverse employment decisions premised on hostility toward the handicapped condition of the employee's spouse, it is treating the employee as if he were handicapped himself…" *Id.* at 30. The SJC noted expressly, however, that its finding was not extended to a claim where a plaintiff sought a reasonable accommodation based on his spouse's condition since that issue was not before it. *See id.* at 32, fn. 18. Justice Gants reiterated this

9

point in his concurring opinion, first noting "the special nature of these circumstances", and then making clear that, "the court's opinion does not suggest that an employer is required under § 4(16) to provide reasonable accommodation to an employee who is not himself handicapped to allow the employee to attend to important family matters, medical or otherwise." *Id.* at 42.

In *Fenn v. Mansfield Bank*, 2015 WL 628560 (D. Mass. 2015) Judge Gorton also noted that an associational discrimination claim did not exist for an employer's failure to make a reasonable accommodation. Although Judge Gorton ultimately denied the employer's motion to dismiss because the plaintiff there alleged that he was terminated *directly because* of his wife's disability (like the plaintiff in *Flagg v. Alimed*), Judge Gorton stated that the employer's motion to dismiss would have been allowed if the plaintiff's claim was only that he was terminated for seeking a work accommodation on account of his wife's condition. *See id.* at *3. "No such accommodation is owed to plaintiff on account of his wife's disability and the *Flagg* decision cannot reasonably be construed as an extension of § 4(16) to protect against any such actions by employers." *Id.* at *4.

Here, unlike in *Flagg*, Plaintiff does not allege that CGIT terminated him *because of* discriminatory animus directed toward his allegedly disabled mother. In fact, Plaintiff's allegations make clear that CGIT wanted Plaintiff to *return to work* and did not intend to terminate him simply because of his mother's health condition, which had apparently been long-standing. Instead, Plaintiff's allegations are that he was denied the accommodation of working from home, which he requested in part because of his mother's alleged health problems, and that he was then terminated when he apparently refused to accept that denial. As *Flagg* and *Fenn* make clear, associational discrimination under Chapter 151B has not been extended to situations where a plaintiff is terminated for seeking an accommodation on account of a family member's

health condition. Therefore, Plaintiff's associational discrimination claim fails as a matter of law and should be dismissed.

**2.     Count II of the Complaint should be dismissed because Plaintiff has failed to plead a *prima facie* case of age discrimination.**

Plaintiff has failed to sufficiently plead a *prima facie* case of age discrimination under Chapter 151B. *See Knight v. Avon Products, Inc.*, 438 Mass. 413, 422 (2003) ("Whether a plaintiff has proffered sufficient evidence to establish a prima facie case is a question of law…"). "[D]iscriminatory animus [ ] remains an essential element of G. L. c. 151B that the plaintiff must prove." *Id.* at 420, n. 4. While Plaintiff states in vague and conclusory fashion in Count II that he was "discriminated against because of his age in violation of G.L. c. 151B", he does not allege *any* facts which, if true, could be considered direct evidence that any adverse action by CGIT was motived by his age. In fact, other than noting that he is 55 years old, Plaintiff alleges no other facts remotely concerning his age, and certainly none that support the conclusion that CGIT's refusal of his accommodation or termination of him had anything to do with his age.

Where there is no direct evidence of discrimination, Massachusetts courts follow the familiar three-stage order of proof set forth by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 116 (2000). In the first stage, the employee has the burden to establish a *prima facie* case of discrimination. *Id.* In an age discrimination case, this requires the plaintiff to establish that: (1) he was a member of a protected class (that is, over forty years of age); (2) he performed his job at an acceptable level; (3) he suffered an adverse employment action; and (4) he was replaced by a similarly or less qualified younger person. *See Mitchell v. Tac Tech. Servs.*, 50 Mass. App. Ct. 90, 92 (2000). The Supreme Judicial Court has made clear that in order to establish the fourth element of the *prima facie* test, the plaintiff's replacement must be

"substantially" younger, i.e., five years or more. *See Knight, supra* at 425 ("We conclude that an age disparity of less than five years, by itself, is too insignificant to support a *prima facie* case of age discrimination").

Even conceding solely for the purposes of this motion that Plaintiff has sufficiently established the first three elements, his claim fails because he has not established the fourth. Plaintiff does not allege any direct evidence of age discrimination, and alleges nothing regarding his replacement, including no allegation that he was replaced by someone substantially younger or treated disparately at all due to his age. *See id.* (concluding that the plaintiff failed to establish a *prima facie* age discrimination case as a matter of law where there was no direct evidence of discriminatory animus and plaintiff's replacement was only twenty eight months younger: "A plaintiff who cannot establish a prima facie case (and who otherwise lacks evidence of discrimination) [ ] cannot survive the first stage of his claim."). *See also Banks v. Hallsmith-Sysco Food Services*, *supra* at *8-9 (concluding that plaintiff could not establish the fourth element of a prima facie case of age discrimination where there was no evidence of ageist comments and no evidence concerning the age of the plaintiff' replacement). Thus, Plaintiff has failed to meet the pleading requirements of a claim for age discrimination under Chapter 151B, and Count II of the Complaint should be dismissed.

**3.     Count III of the Complaint should be dismissed because Plaintiff has failed to plead a *prima facie* case of discrimination on the basis of race/national origin.**

Just as with his age discrimination claim, other than alleging that he is in a protected class (Chinese-American), Plaintiff has alleged no <u>facts</u> that, if true, could support a finding the CGIT discriminated against him on the basis of race/national origin. Again, Plaintiff does not allege *any* direct evidence of discriminatory animus on the basis of race/national origin. Where there is no such direct evidence, Massachusetts courts follow the familiar three-stage order of proof in

race/national origin discrimination cases. *See Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 116 (2000). "In the first stage, the employee has the burden to establish a prima facie case of discrimination by showing that "(1) he is a member of a class protected by G.L. c. 151B; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiff's position by hiring another individual with qualifications similar to the plaintiff's.... [T]he elements ... may vary depending on the specific facts of a case." *Id.*

Again, even assuming solely for the purposes of this motion that Plaintiff has met the first three prongs of the analysis, he does not allege any facts to support the fourth. In fact, he has alleged no facts whatsoever that the refusal to grant his accommodation or his termination were in any way shape or form due to the fact that he is a Chinese-American, or that CGIT sought to fill his position with a similarly qualified individual of a different race/national origin. Simply being in a protected class is not enough to support a *prima facie* case of race/national origin discrimination. *See Abramian, supra* at 116. Since Plaintiff cannot establish a *prima facie* case, Count III should be dismissed.

## CONCLUSION

For the reasons set forth above, Counts I, II, and III of the Complaint should be dismissed in their entirety.

THE DEFENDANT,

CGIT SYSTEMS, INC.,

BY ITS ATTORNEY,

*/s/ John E. (Jed) DeWick*

>John E. (Jed) DeWick (BBO# 654723)
>jdewick@arrowoodllp.com
>Arrowood, LLP
>10 Post Office Square, 7th Floor South
>Boston, MA 02109
>Phone: (617) 849-6200
>Fax: (617) 849-6201

Dated: June 26, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) or sent by first-class mail to any persons presently indicated as non-registered participants on this date.

>*/s/ John E. (Jed) DeWick*
>
>John E. (Jed) DeWick (BBO # 654723)
>June 26, 2020