UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YIYU LIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. 1:20-cv-11051 |
| | ) |
| CGIT SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

NOW COMES the Plaintiff, Yiyu Lin ("Plaintiff"), by and through counsel, and hereby files this Opposition to the Defendant, CGIT Systems, Inc.'s ("Defendant") Partial Motion to Dismiss ("Motion"). As grounds for this Opposition, Plaintiff states that under United States Supreme Court precedent, he is not required to allege facts sufficient to establish a full *prima facie* case in his Complaint; notwithstanding, Plaintiff has done so anyway with respect to his disability, race/national origin and age claims.

Plaintiff's disability discrimination claim is multi-faceted, and Defendant only selectively addresses pieces of it. The novel question of whether Plaintiff's hypertension during a pandemic could constitute a disability is one of fact not appropriate at this juncture. Moreover, the Court is not able at this stage to rule as a matter of law that Plaintiff was not terminated for alleging to be a qualified disabled person in need of a reasonable accommodation. Plaintiff's associational discrimination claim is also adequately pled, and at worst presents an unresolved question of Massachusetts law.

Plaintiff has adequately stated a *prima facie* case for both race/national origin and age discrimination. Plaintiff need not offer any direct evidence of discrimination, and the Court does

not conduct the burden shifting discrimination analysis on a motion to dismiss in any event. The Motion should therefore be denied. In further support of his Opposition, Plaintiff states as follows:

## I. BACKGROUND

Plaintiff is a fifty-five-year-old Chinese-American with a history of high blood pressure, which was known to Defendant. See Complaint, ¶¶ 6, 12. Plaintiff also lives with his eighty-one-year-old mother who has heart disease (with a pacemaker installed), high blood pressure and diabetes, which was known to Defendant. See Complaint, ¶ 13.

Plaintiff worked for Defendant for fifteen years before his termination, most recently as Senior Project Engineer/Team Lead reporting to Defendant's Medway, Massachusetts location. See Complaint, ¶¶ 8-9, 11, 14. During Plaintiff's tenure with Defendant, the reviews of his work were always positive and he never received a negative performance review. In fact, Plaintiff was recognized as one of the best engineers in his department. See Complaint, ¶ 11.

Following Massachusetts Governor Charlie Baker's order closing non-essential businesses due to the novel Coronavirus ("COVID-19") pandemic, Plaintiff began working from home on March 16, 2020 after obtaining verbal consent from his Manager. See Complaint, ¶ 15. Plaintiff was concerned about Defendant's workplace due to lack of safety changes made, lack of social distancing, and employees coming to work who were sick. See Complaint, ¶¶ 17-19, 22.

On March 25, 2020, Plaintiff's General Manager instructed that all employees working from home must report to Defendant's office location for work on March 27, 2020. See Complaint, ¶ 20. Plaintiff's General Manager communicated that any employee who wanted to take a leave of absence or telecommute must submit a form and await approval from their manager, general manager and human resources. Complaint, ¶ 21. Plaintiff sought to continue to

work remotely until April 7, 2020, which at the time was the expiration of the Governor's stay at home order. Complaint, ¶ 22. Plaintiff did so because of safety concerns at Defendant's workplace in combination with the health conditions of he and his mother. Complaint, ¶ 22. Those concerns were well founded, as exposure to COVID-19 within Defendant's workplace was significant during this time. See Complaint, ¶¶ 26, 37.

Plaintiff submitted a request to continue to work from home on the form required by Defendant on March 26, 2020. Complaint, ¶ 23. While the request was processing, Plaintiff asked to use a "floating holiday"; his Manager initially responded, "Are you kidding me?" It was later approved after Plaintiff educated his Manager of federal COVID-19 guidance. Complaint, ¶ 24.

On March 28, 2020, Defendant informed Plaintiff that his request to work from home had been denied and that he was required to work in Defendant's office location effective March 30, 2020. Complaint, ¶ 27. During the same time, at least two other engineers in Plaintiff's department were approved to work from home pursuant to their requests. Complaint, ¶ 28. Plaintiff sought to use vacation time, but his request was never approved. Complaint, ¶ 29.

Defendant did not engage in any interactive process with Plaintiff, and its decision maker seemed quite pleased with the prospect of Plaintiff's termination, stating that Plaintiff was "helping us document his termination." Complaint, ¶ 30. When Plaintiff's last day of paid leave was exhausted, he was terminated for "job abandonment" on the first day he did not appear back at Defendant's workplace, despite reiterating the reasons for his remote work request and noting how he had been successfully working remotely for weeks. Complaint, ¶¶ 32-35. Plaintiff's Manager stated to other employees of Defendant that he "needed to make an example" of Plaintiff. Complaint, ¶ 36. On April 3, 2020, three days after Plaintiff was terminated, all

employees of Defendant were told to work from home immediately until at least April 7, 2020. Complaint, ¶ 38.

## II.   STANDARD OF REVIEW

Dismissal is a "disfavored remedy" in the context of employment discrimination matters "because the ultimate issue of discriminatory intent is a factual question." Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439 (1995) (discussing in the context of summary judgment), citing Anderson v. Bessemer City, 470 U.S. 564, 572-573 (1985). In an employment discrimination case, the question of the employer's intent and motive is generally one for the jury. See Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 30 (1st Cir. 2015).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). Plaintiff need not allege facts sufficient to establish a full *prima facie* case at the pleading stage. Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002) ("Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."); Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) ("the Swierkiewicz holding remains good law. It is not necessary to plead facts sufficient to establish a *prima facie* case at the pleading stage.")

The plaintiff must only "plead enough facts to make entitlement to relief plausible." Higgins v. State St. Corp., 323 F.Supp.3d 203, 206 (D. Mass. 2018), citing Rodriguez-Reyes, 711 F3d at 54. "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012), quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "The

relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 13 (1st Cir. 2011).

### III.     ARGUMENT

**A.     Plaintiff Has Sufficiently Pled His Disability Discrimination Count.**

It is a matter of black letter law that a Plaintiff need not establish a full *prima facie* case at the pleading stage, but only a plausible entitlement to relief. Plaintiff has clearly done so in his Complaint. It is an individualized, fact-intensive question whether Plaintiff's medical condition in the time of the COVID-19 pandemic constituted a disability within the meaning of G.L. c. 151B that cannot be resolved at the 12(b)(6) stage. Similarly, the factual record needs to be developed through discovery to determine if Plaintiff was terminated due to his association with a disabled person and/or his allegation that he was a disabled person capable of performing his job with a reasonable accommodation. The question of whether Defendant was required to offer a reasonable accommodation based on Plaintiff's mother's condition presents an unresolved question of Massachusetts law.

Plaintiff's disability discrimination count is multi-faceted, yet Defendant only selectively addresses portions of the claim. Not only does Plaintiff allege that he was discriminated against based on his disability and that of his mother, he also alleges that Defendant failed to offer him a reasonable accommodation (continued remote work for a limited period of time) or engage in the interactive process in any meaningful way. Defendant ignores these latter issues.

**1.     Determination Of Plaintiff's Disability Cannot Be Made At This Stage.**

"Determining whether a plaintiff is [disabled] is a fact-intensive analysis and must be made on a case-by-case basis." Gauthier v. Sunhealth Specialty Services, Inc., 555 F. Supp. 2d

227, 239 (D. Mass. 2008), citing Calero–Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 20 (1st Cir. 2004). As the First Circuit has noted, in assessing the degree of limitation occasioned by a physical impairment, the Court's inquiry is "fact-intensive and individualized." Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010). To that end, it is not surprising that the case law primarily relied upon by Defendant in its Motion involves cases decided past the 12(b)(6) stage, with the benefit of a full record.

The relevant inquiry not only involves medical conditions themselves, but also complications that may arise from those conditions, even where the underlying condition may not be regarded as a disability on its own. See, e.g. Gauthier, 555 F. Supp. 2d at 239. It is instructive that in Faiola v. APCO Graphics, Inc., 629 F.3d 43, 48 (1st Cir. 2010), a summary judgment case upon which Defendant places great reliance,[1] the Court considered whether certain work activities (airplane travel) would have placed the plaintiff at increased risk, and considered medical evidence.[2]

Here, despite the new evolving nature of the issue, many courts have considered the interaction of high blood pressure with COVID-19,[3] with some finding that exposing a person with hypertension to the virus would create a "significant risk of suffering catastrophic health consequences." U.S. v. Sawicz, 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10,

---

[1] The only other case that Defendant puts forth to substantively support its argument to dismiss Count I, Banks v. Hallsmith-Sysco Food Services, 72 Mass. App. Ct. 1103 (2008) (Rule 1:28), is an unreported summary judgment case which is factually inapposite.

[2] To the extent that Plaintiff is required at this stage to allege that he was substantially limited in a major life activity, he has done so. Chapter 151B includes "working" among "major life activities." See Miller v. Verizon Comm., Inc., 474 F. Supp. 2d 187, 195 (D. Mass. 2007). Plaintiff alleges that due to his hypertension during the height of the COVID-19 pandemic, he was substantially limited from working safely at Defendant's office location.

[3] The majority of the cases examining the issue have arisen in the context of prospective inmate release from incarceration.

2020) ("defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension"). See also U.S. v. Salvagno, 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); U.S. v. Calloway, 3:16-CR-00121, 2020 WL 3510684, at *2 (M.D. Tenn. June 29, 2020) ("current scientific research suggests that high blood pressure can substantially increase the likelihood of serious COVID-19 complications."); U.S. v. Pabon, No. 17-165-1, 2020 WL 2112265, at *9 (E.D. Pa. May 4, 2020) (identifying hypertension as a serious health condition and one of "the two leading comorbidities associated with increased risk from COVID-19"); U.S. v. Scparta, 18-CR-578 (AJN), 2020 WL 1910481, at *3 (S.D.N.Y. Apr. 20, 2020) ("The Centers for Disease Control has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19."); Toma v. Adducci, 20-11071, 2020 WL 2832255, at *5 (E.D. Mich. May 31, 2020) ("CDC recognizes 'pulmonary hypertension' as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications."); U.S. v. Anderson, No. 15-CR-30015, 2020 WL 2521513, at *5 (C.D. Ill. May 18, 2020) ("Defendant suffers from hypertension, a condition that increases the serious risks that COVID-19 presents for Defendant."); U.S. v. Clark, 4:08-CR-00096, 2020 WL 3395540, at *5 (S.D. Iowa June 17, 2020) (High blood pressure considered a condition "that increase[s] the likelihood of a lethal COVID-19 case.").

Some courts have taken judicial notice of the fact "that COVID-19 causes severe medical complications and has increased lethality amongst people of advanced age, and those with underlying health problems, or both." Basank v. Decker, 20 CIV. 2518 (AT), 2020 WL 1953847, at *7 (S.D.N.Y. Apr. 23, 2020). Other courts acknowledge that, "the relationship between

hypertension and elevated risk from COVID-19 appears not to be fully understood." Gomes v. US Dept. of Homeland Sec., Acting Sec., 20-CV-453-LM, 2020 WL 2514541, at *16 (D.N.H. May 14, 2020) (noting that some "experts believe that COVID-19 strains the heart, making people with hypertension more vulnerable to the disease").

Moreover, the risk to Plaintiff was not hypothetical or considered in a vacuum, but rather through the lens of a worsening pandemic that was crippling the Commonwealth. As of March 24, 2020, there were 1,159 confirmed COVID-19 cases in the Commonwealth with eleven deaths and ninety-four hospitalizations attributed to COVID-19. There were 129 confirmed cases in Norfolk County, the county where Defendant's place of employment was located, as of March 24, 2020.[4] As of March 31, 2020, the date Plaintiff was terminated, there were 6,620 confirmed cases and a total of eighty-nine deaths and 562 hospitalizations attributed to COVID-19 in Massachusetts. There were 738 confirmed cases in Norfolk County as of March 31, 2020. At that time, Norfolk County accounted for approximately 11.15% of all of Massachusetts' cases.[5]

As of March 30, 2020, "'nearly 90% of adult patients hospitalized with COVID-19 in the US had one or more underlying diseases,' and out of those patients 49.7% of them had hypertension." Pabon, 2020 WL 2112265 at *1 (citation omitted).

Defendant does not point the Court to any authority, nor could it, that has considered whether complications and/or increased risk as a result of the potential interaction of

---

[4] Massachusetts Department of Public Health, Coronavirus Disease 2019 (COVID-19) Cases in MA, (March 24, 2020) https://www.mass.gov/doc/covid-19-cases-in-massachusetts-as-of-march-24-2020/download

[5] Massachusetts Department of Public Health, Coronavirus Disease 2019 (COVID-19) Cases in MA, (March 31, 2020) https://www.mass.gov/doc/covid-19-cases-in-massachusetts-as-of-march-31-2020/download

hypertension and COVID-19 could be considered a disability under Massachusetts law. At most, it presents a novel question, and certainly cannot be decided without discovery and a full record.

**2. Determination Of Whether Plaintiff Was Terminated For Alleging To Be A Qualified Disabled Person In Need Of A Reasonable Accommodation Cannot Be Made At This Stage.**

Employers in Massachusetts are prohibited from dismissing from employment an employee "alleging to be a qualified [disabled] person, capable of performing the essential functions of the position involved with reasonable accommodation." G.L. c. 151B, § 4(16). "To make a reasonable accommodation request, no 'magic' words are required." Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 847-848 (2009). Furthermore, a plaintiff need not have an *actual* disability to trigger the employer's duty to accommodate. See Massasoit Indus. Corp. v. Massachusetts Comm'n. Against Discrimination, 91 Mass. App. Ct. 208, 214 (2017). All that is necessary is that the health condition alleged is one that the employer could reasonably regard as one causing a limitation to the employee's ability to work. Id.

Here, Plaintiff informed Defendant that due to his medical condition, he was requesting the reasonable accommodation of working remotely for a limited period of time. This was enough to trigger a reasonable accommodation request. That request was refused, out of hand and without any dialogue, and Plaintiff was terminated shortly after, with Plaintiff's supervisor commenting that he wanted to "make an example" out of Plaintiff. At this stage, it would be premature for the Court to determine that Plaintiff's reasonable accommodation request was not the reason for his termination as a matter of law.

**3. Defendant Failed To Engage In The Interactive Process With Plaintiff.**

If a requested accommodation is not suitable or a request is otherwise inappropriate, under Massachusetts law the employer nonetheless "must make a reasonable effort to determine

the appropriate accommodation ... through a flexible, interactive process that involves both the employer and the qualified individual with a disability." Miceli v. JetBlue Airways Corp., 914 F.3d 73, 82 (1st Cir. 2019) (citations omitted). In some cases, a failure to engage in the interactive process may constitute a failure to provide a reasonable accommodation. Gauthier, 555 F. Supp. 2d at 241, citing Kvorjak v. Maine, 259 F.3d 48, 52–53 (1st Cir. 2001) and Jacques v. Clean–Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996).

Courts have denied motions for summary judgment, much less motions to dismiss, where an employer, as here, rejects an accommodation request "out of hand," even where it is difficult to ascertain whether the interactive process "might have yielded anything useful." See, e.g. Gauthier, 555 F. Supp. 2d at 241.

Here, Plaintiff made a request for reasonable accommodation, which was to continue to work remotely (as he had successfully done for weeks) for a limited period of time (an additional six business days). Defendant rejected that request out of hand (despite approving it for others), and presented Plaintiff with a "take it or leave it" proposition: report to work in person, despite his medical condition and the raging COVID-19 pandemic (which had already infiltrated Defendant's workplace), or be terminated. At the same time, the evidence as pled suggests that even those within Defendant's organization were imploring the decision makers to engage in an interactive process with Plaintiff. Plaintiff's General Manager proposed considering other options to Defendant's Director of Human Resources, such as a leave of absence, and stated that Plaintiff did "not understand the results of his position." Rather than engage with Plaintiff, Defendant's Director of Human Resources seemed happy with the outcome, stating that Plaintiff was "helping us document his termination."

It is crystal clear that Defendant failed to engage in the interactive process, which will likely be the subject of a motion for summary judgment filed by Plaintiff at a later stage of this proceeding. Certainly, Defendant's failure to even address this claim in its Motion does not entitle it to dismissal.

**4.      Plaintiff Adequately States A Claim For Associational Discrimination.**

Plaintiff has satisfied his pleading obligation in all respects in regards to his associational discrimination claim. The questions regarding discriminatory animus cannot be resolved at the 12(b)(6) stage. Moreover, the fact that Massachusetts law is unsettled on the issue of associational accommodation does not preclude the claim, particularly where the Court may certify the question.

**a.      Plaintiff Has Pled That His Termination Was Based on Discriminatory Intent.**

On a motion to dismiss, the Court does "not consider potential nondiscriminatory reasons for termination," but rather "examine[s] the complaint to determine whether it contains 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 470 (2d Cir. 2019), quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Kelleher is instructive as it involved a claim of a father who asked for a reasonable accommodation based on the health condition of his daughter. Id. at 466-467. After alerting his employer to his daughter's medical condition and need for intermittent leave, his "relationship with the Company deteriorated," including being told that "his problems at home were not the company's problems." Id. He was later terminated due to a minor infraction. Id. The Second Circuit held that whether discriminatory "motivation was 'the true reason (or in any event not the sole reason) for the employment decision' is a question that cannot be resolved on these

11

pleadings alone. 'The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification.'" Id. at 470 (citations omitted).

Similarly here, Plaintiff made a request for a reasonable accommodation due to his health condition and that of his mother. Shortly thereafter, despite fifteen years of impeccable service with Defendant, his relationship with the company deteriorated, resulting ultimately in his termination for "job abandonment," a result that Defendant was pleased that Plaintiff "helped document." The Complaint contains ample support that Defendant's decision to terminate Plaintiff was motivated by discriminatory intent, and the Motion should accordingly be denied.

**b.     The Question Of Associational Accommodation Is Unresolved Under Massachusetts Law.**

As Defendant concedes, the question of whether an employee is entitled to a reasonable accommodation based on the condition of a family member has not been decided in Massachusetts. See Flagg v. AliMed, Inc., 466 Mass. 23, 32 n. 18 (2013) ("that issue is not raised in this case."). The fact that the issue is one of first impression in the Commonwealth does not preclude the claim. In fact, the Supreme Judicial Court frequently defers ruling on issues until they are ripe for review. See, e.g. George v. Jordan Marsh Co., 359 Mass. 244, 255 (1971) (with respect to recognition of the tort of IIED without bodily injury, "[t]hat question may be left until it arises," quoting Smith v. Postal Tel. Cable Co., 174 Mass. 576, 577 (1899); see also Agis v. Howard Johnson Co., 371 Mass. 140, 142 (1976) ("The question… was 'left until it arises,' and that question has arisen here.").[6]

---

[6] "The Massachusetts Supreme Judicial Court (SJC) permits a federal court to certify a question to it 'if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.'" Easthampton

Here, it is likely that the Supreme Judicial Court would hold that an employer has an obligation to provide a reasonable accommodation based on the disability of a family member under its associational discrimination analysis. This is particularly the case with respect to COVID-19, which is particularly lethal in persons like Plaintiff's mother who are of an advanced age with comorbidities who can be infected by asymptomatic individuals. Because of this, the Motion should be denied or, in the alternative, the question should be certified to the Supreme Judicial Court for resolution.

### B.   Plaintiff Has Sufficiently Pled His Race/National Origin Discrimination Count.

Plaintiff need not allege facts sufficient to establish a full *prima facie* case at the pleading stage. Swierkiewicz, 534 U.S. at 510. Despite this, Plaintiff has stated a *prima facie* case for race/national origin discrimination. "To do so, a plaintiff must provide 'evidence that: (1) he [or she] is a member of a class protected by G.L. c. 151B; (2) he [or she] performed his [or her] job at an acceptable level; [and] (3) he [or she] was terminated.'" Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 681 (2016) (involving claim of racial discrimination).[7]

Plaintiff also need not proffer any direct evidence of discrimination at the 12(b)(6) stage or otherwise. This is because "[d]irect evidence of intentional discrimination is rarely found in

---

Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013), certified question answered, 470 Mass. 284 (2014), quoting Mass. S.J.C. R. 1:03.

[7] Defendant is apparently not aware of recent developments in Massachusetts discrimination law removing the necessity that Plaintiff show that the position remained open and the employer sought to fill it with a person of similar qualifications. See, e.g. Massasoit Indus. Corp., 91 Mass. App. Ct. at 211 n. 4 ("We note that Bulwer does not say that an employee in a discharge case must show that the position remained open or that the employer sought to fill the position with a person with similar qualifications. Previous precedent included such a showing as an element of the *prima facie* case in discrimination actions."). Accord Gordon v. EarthLink, Inc., CV 14-14145-FDS, 2017 WL 3203385, at *7 (D. Mass. July 27, 2017) (applying "test laid out in Bulwer, which appears to be the current articulation of the *prima facie* test in Massachusetts.").

13

today's sophisticated employment world." Allder v. Daniel O'Connell's Sons, 20 F. Supp. 2d 210, 214 (D. Mass. 1998). "There will seldom be 'eyewitness' testimony as to the employer's mental processes." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983).

There is no dispute that Plaintiff is Chinese-American (at a primarily white employer), was one of the best engineers that Defendant had with a spotless personnel record, and was terminated. There is also no dispute that Plaintiff had been working from home successfully for weeks, in a role that could be performed remotely, before his termination. There is no dispute that Plaintiff's request to continue to work remotely until April 7, 2020 (an additional six working days) was rejected out of hand, while Defendant approved other remote work requests. There is also no dispute that Plaintiff was terminated on the first work day he did not appear at Defendant's office location for "job abandonment."

It should be noted that as the COVID-19 pandemic was becoming more serious, there was a rise in Anti-Chinese racism across this country. This was in part fueled by President Trump referring to COVID-19 as the "Wuhan Virus" and "Chinese coronavirus."[8] On March 17, 2020, a White House official used the offensive racist moniker "Kung Flu" to refer to COVID-19 to the face of an Asian American Reporter,[9] later repeated by President Trump at a campaign rally.[10] The Anti-Chinese sentiment had grown so much in Massachusetts that on March 27,

---

[8] Allyson Chiu, Trump has no qualms about calling coronavirus the "Chinese Virus." That's a Dangerous attitude, experts say., THE WASHINGTON POST (March 20, 2020, 7:22 AM), https://www.washingtonpost.com/nation/2020/03/20/coronavirus-trump-chinese-virus/

[9] Emma Tucker, CBS Reporter: WH Official Called Coronavirus 'Kung Flu' to My Face Today, DAILY BEAST (March 17, 2020 11:57 A.M.) https://www.thedailybeast.com/cbs-reporter-weijia-jiang-says-wh-official-called-coronavirus-kung-flu-to-her-face

[10] David Nakamura, With 'kung flu,' Trump sparks backlash over racist language – and a rallying cry for supporters, THE WASHINGTON POST (June 24, 2020 7:13 P.M.) https://www.washingtonpost.com/politics/with-kung-flu-trump-sparks-backlash-over-racist-

2020 (the day before Plaintiff's remote work request was denied), Boston Mayor Marty Walsh felt the need to caution citizens against blaming minority groups, stating that the "virus doesn't discriminate, neither should we…[t]his is not the time for scapegoating, this is not a time for stigmatizing anyone."[11]

No rational fact finder could conclude that the real reason for Plaintiff's termination was "job abandonment." To the contrary, a rational fact finder could reasonably infer from the falsity of the explanation that Defendant is "dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 134 (2000). This is because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Id. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive." Id.

But it is not the Court's role at this juncture to determine liability or conduct this analysis. Rather, the Court's role is simply to determine if Plaintiff's Complaint possesses enough heft to state a claim that is plausible on its face, accepting the allegations as true and construing all reasonable inferences in Plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–557 (2007). It unquestionably does and, accordingly, the Motion should be denied.

---

language--and-a-rallying-cry-for-supporters/2020/06/24/485d151e-b620-11ea-aca5-ebb63d27e1ff_story.html

[11] 'Not A Time For Scapegoating': Walsh Says Boston Won't Stand For Racism During Coronavirus Pandemic, 4WBZ CBS Boston (March 27, 2020, 3:36 PM), https://boston.cbslocal.com/2020/03/27/coronavirus-boston-racism-immigrants-mayor-walsh/?_gl=1

### C.     Plaintiff Has Sufficiently Pled His Age Discrimination Count.

Plaintiff's age discrimination claim is subject to the same *prima facie* analysis. There is no dispute that Plaintiff was fifty-five years old, performing his job at an acceptable level, and was terminated. He therefore adequately states a *prima facie* case for age discrimination. See Massasoit Indus. Corp., 91 Mass. App. Ct. at 211 (involving a claim of age discrimination).[12]

Despite Defendant's argument, the Court does not conduct the McDonnell Douglas burden shifting analysis at the motion to dismiss stage. See Lax v. 29 Woodmere Blvd. Owners, Inc., 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011) ("the McDonnell Douglas burden-shifting analysis is not applied at the motion to dismiss stage."). Plaintiff is also not required to proffer direct evidence of discrimination, "as pretext may be proven in a number of ways." Massasoit Indus. Corp., 91 Mass. App. Ct. at 210. For example, in Massasoit Indus. Corp, the hearing officer found the employer's reasons for termination (no call/no show) pretextual, in part because of the "haste" with which the employer terminated the employee and lack of an interactive process. Id. at 211. Defendant followed a similar approach in terminating Plaintiff.

Where, as here, multiple "bases for discrimination exist, they cannot be neatly reduced to distinct components" and "it is necessary to determine whether the employer discriminates on the basis of that combination of factors." See Lam v. U. of Hawai'i, 40 F.3d 1551, 1562 (9th Cir. 1994) (in context of race and sex); see also Jeffers v. Thompson, 264 F. Supp. 2d 314, 326 (D. Md. 2003). In Massasoit Indus. Corp., Massachusetts Appeals Court affirmed a MCAD decision in favor of a terminated employee, finding the employer's discrimination was "based on a

---

[12] Interestingly, while claiming that Plaintiff's Complaint does not include an allegation that someone substantially younger replaced him, Defendant makes no affirmative statement as to who actually did replace Plaintiff. It is axiomatic that this information is solely in the possession of Defendant, which will be discoverable to Plaintiff as this case proceeds.

combination of concerns about his age and his health." <u>Massasoit Indus. Corp.</u>, 91 Mass. App. Ct. at 209.

Again, however, this is an argument for another day at a different stage of this litigation. It suffices to say that Plaintiff's Complaint satisfies the pleading requirements, and that the Motion should therefore be denied.

## IV. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Yiyu Lin, respectfully requests that this Honorable Court DENY the Defendant, CGIT Systems, Inc.'s Partial Motion to Dismiss in all respects.

Respectfully submitted,
**YIYU LIN**,
By his attorney,

/s/Mark D. Szal
Mark D. Szal, BBO# 667594
SZAL LAW GROUP LLC
6 Liberty Square #330
Boston, Massachusetts 02109
Telephone: (617) 830-2494
Dated: July 17, 2020                            mark@szallawgroup.com

**Certificate of Service**

  I, Mark D. Szal, hereby certify that on July 17, 2020, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

             /s/Mark D. Szal
             Mark D. Szal