UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

YIYU LIN,
    Plaintiff,

    v.                                                                CIVIL ACTION NO.
                                                                      20-11051-MBB
CGIT SYSTEMS, INC.,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION TO DISMISS**
**(DOCKET ENTRY # 6)**

**September 21, 2021**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by defendant CGIT Systems, Inc. ("defendant"). (Docket Entry # 6). Plaintiff Yiyu Lin ("plaintiff") opposes dismissal. (Docket Entry # 9). Defendant filed a reply to plaintiff's opposition. (Docket Entry # 15). After conducting a hearing, this court took the motion under advisement.

PROCEDURAL BACKGROUND

Plaintiff filed this action on June 3, 2020, after obtaining permission to sue from both the Massachusetts Commission Against Discrimination and the Office of the Massachusetts Attorney General's Fair Labor Division. (Docket Entry # 1, pp. 6-7, ¶¶ 39-42). The complaint sets out four claims: discrimination because of his disability as well as his mother's disability (Count I), age discrimination (Count II),

race or national origin discrimination (Count III), and retaliation (Count IV). (Docket Entry # 1, pp. 8-9, ¶¶ 55-63). Counts I through III arise under Massachusetts General Laws, chapter 151B ("chapter 151B"), and Count IV arises under Massachusetts General Laws, chapter 149, section 148C. Defendant presently seeks to dismiss Counts I, II, and III for failure to state a claim under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").[1]  (Docket Entry # 6).

STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion to dismiss is well established. To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face" even if actual proof of the facts is improbable. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016). The "standard is 'not akin to a "probability requirement," but it'" requires "'more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (citations omitted). For a party to "survive a motion to dismiss, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" In re ARIAD Pharms. Sec. Litig., 842 F.3d 744, 756

---

[1]  Defendant disputes Count IV as well but does not address that count in the motion to dismiss. (Docket Entry # 7, p. 4, n.3).

(1st Cir. 2016) (quoting <u>Twombly</u>, 550 U.S. at 570).  "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (internal quotation marks omitted) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

"[A]ll reasonable inferences" are drawn "in the pleader's favor."  <u>Sanders v. Phoenix Ins. Co.</u>, 843 F.3d 37, 42 (1st Cir. 2016).  Legal conclusions, however, are not considered.  <u>See</u> <u>Dixon v. Shamrock Fin. Corp.</u>, 522 F.3d 76, 79 (1st Cir. 2008) (accepting "well-pleaded facts as true, but reject[ing] 'unsupported conclusions or interpretations of law'" in reviewing Rule 12(b)(6) dismissal).

## FACTUAL BACKGROUND

Defendant is a publicly-traded company that provides "galvanizing, welding solutions, specialty electrical equipment, and highly engineered services."  (Docket Entry # 1, p. 2, ¶ 7).  Plaintiff is a 55-year-old Chinese-American with a history of high blood pressure and was an employee of defendant from April 1, 2005, until his termination on March 31, 2020.  (Docket Entry # 1, pp. 1-22, 6, ¶¶ 6, 8, 35).  At the time of his termination, plaintiff was a "Senior Project Engineer/Team Lead."  (Docket Entry # 1, p. 2, ¶ 9).  Throughout his employment, he received consistently positive performance reviews and was "recognized as

one of the best engineers in his department." (Docket Entry # 1, p. 2, ¶ 11).

Because of Massachusetts Governor Charlie Baker's order closing non-essential businesses due to the COVID-19 pandemic,[2] and with "verbal consent from his Manager," plaintiff began working from home on March 16, 2020. (Docket Entry # 1, p. 3, ¶ 15). Defendant knew that plaintiff had a history of high blood pressure and that he lived with his 81-year-old mother, who suffers from heart disease, high blood pressure, and diabetes. (Docket Entry # 1, p. 3, ¶¶ 12-13).

While working at home from March 16 through the date of his termination, plaintiff "participated in daily morning engineering status meetings[,] . . . internal project status meetings[,]" and "weekly project status meetings." (Docket Entry # 1, p. 3, ¶ 16). He also "executed and completed all tasks through [defendant's] VPN." (Docket Entry # 1, p. 3, ¶ 16). Accordingly, the complaint sets out facts that show plaintiff was adequately performing his job.

"On March 25, 2020, [p]laintiff's General Manager instructed" all employees working from home to report to defendant's office for work on March 27, 2020. (Docket Entry # 1, p. 4, ¶ 20). Defendant required that any employee who wished

---

[2] The complaint does not state whether Governor Baker's order categorized defendant's business as essential or non-essential.

to continue working from home submit a form and obtain approval
from his "manager, general manager[,] and human resources."
(Docket Entry # 1, p. 4, ¶ 21).  "Plaintiff communicated to his
Manager that he wanted to" continue working from home and, on
March 26, 2020, submitted the required form.  (Docket Entry # 1,
p. 4, ¶¶ 22-23).  While awaiting approval, plaintiff requested a
"floating holiday" on March 27 to avoid reporting to the office,
to which plaintiff's Manager responded, "'Are you kidding me?'"
(Docket Entry # 1, p. 4, ¶ 24).  Defendant later approved the
floating holiday, "[a]fter [p]laintiff reminded his Manager of
the federal guidance concerning COVID-19 with respect to
vulnerable persons."  (Docket Entry # 1, p. 4, ¶ 24).

On March 28, 2020, defendant informed plaintiff about the
denial of his request to work from home and that he was required
to return to work in defendant's office on March 30.  (Docket
Entry # 1, p. 5, ¶ 27).  On the same date, an employee reported
that the employee's "significant other and two roommates tested
positive for COVID-19."  (Docket Entry # 1, pp. 4-5, ¶ 26).
During this same time period, defendant approved requests to
work from home for two other engineers in plaintiff's
department.[3]  (Docket Entry # 1, p. 5, ¶ 28).  Also on March 28,

---

[3]  The complaint therefore plausibly alleges that plaintiff was
similarly situated to these two employees.  The representation
by defendant's counsel at the hearing on the motion, i.e., that

2020, plaintiff requested to take vacation until April 3, 2020, but the request was never approved.  (Docket Entry # 1, p. 5, ¶ 29).  On the same day, plaintiff asked if he could use sick time, to which defendant replied that he "could use his last paid sick day on March 30, 2020, but must report to [d]efendant's office location the following day."  (Docket Entry # 1, p. 5, ¶ 31).  Meanwhile, "[p]laintiff's General Manager emailed [d]efendant's Director of Human Resources to inform him that he had denied [p]laintiff's request to work from home" and "that [p]laintiff was 'pushing back.'"  (Docket Entry # 1, p. 5, ¶ 30).  The Director "responded, 'I think by Tuesday [March 31st] you will be down at least one person. [Plaintiff] is helping us document his termination.'"  (Docket Entry # 1, p. 5, ¶ 30).

"On March 30, 2020, [d]efendant's President" emailed plaintiff "that he needed to report to [d]efendant's office location on March 31, 2020 to continue his employment."  (Docket Entry # 1, p. 5, ¶ 32).  Plaintiff, in response, "reiterated the reasons for his request to work from home, namely that he was 55-years-old with a long-time high blood pressure medical problem, and that he lived with his mother, who was subjected to high risk of COVID-19."  (Docket Entry # 1, p. 6, ¶ 33).

---

these individuals were in their seventies, is not in the complaint.

Plaintiff also pointed out "that he had been working from home for" weeks and that he could perform "all of his work . . . remotely without any problem."  (Docket Entry # 1, p. 6, ¶ 34).

Nevertheless, defendant terminated plaintiff's employment on March 31, 2020, citing "job abandonment."  (Docket Entry # 1, p. 6, ¶ 35).  Plaintiff's Manager told other employees "that he 'needed to make an example' of [p]laintiff and that [d]efendant wouldn't permit people to take sick or vacation time because they were concerned about coming in to work in [d]efendant's office location due to COVID-19."  (Docket Entry # 1, p. 6, ¶ 36).  Within days, both an employee and an employee's wife tested positive for COVID-19.  (Docket Entry # 1, p. 6, ¶ 37).  Five of defendant's employees were also out sick.  (Docket Entry # 1, p. 6, ¶ 37).  On April 3, 2020, defendant instructed all of its employees to work from home until at least April 7, but it did not contact plaintiff about rescinding his termination.  (Docket Entry # 1, p. 6, ¶ 38).

## DISCUSSION

Defendant seeks dismissal on multiple grounds.  As to Count I, defendant asserts that plaintiff fails to establish the first element in a prime facie case that plaintiff is "handicapped" under section 1 of chapter 151B, and that the associational discrimination claim based on his mother's disability does not exist as a matter of law.  (Docket Entry # 7, pp. 5-11).

Plaintiff contends that the issue of whether he has a qualifying handicap is a factual determination that cannot be made at the motion to dismiss stage.  (Docket Entry # 9, pp. 5-6).  He also argues that, because the question of associational discrimination vis-à-vis his mother is unresolved under Massachusetts law, Count I is not appropriate for dismissal. (Docket Entry # 9, pp. 12-13).  Additionally, plaintiff cites defendant's failure to address his claims that defendant failed to provide him a reasonable accommodation and failed to engage in the interactive process with him.  (Docket Entry # 9, pp. 9-11).

As to Counts II and III, defendant argues that the complaint fails to plead a prima facie case of age discrimination and discrimination on the basis of race or national origin, respectively.  (Docket Entry # 7, pp. 11-13). In a reply brief, defendant asserts that the complaint is devoid of any facts to suggest a causal connection between plaintiff's termination and his age, race, or national origin.  (Docket Entry # 15).  Plaintiff counters that the complaint is not required to set forth a prima facie case as to either count, but that it nonetheless does so for both.  (Docket Entry # 9, pp. 13-14, 16).

I.  Disability Discrimination (Count I)

In the context of employment discrimination, a plaintiff is not required to plead facts in the complaint sufficient to establish a prima facie case.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) ("The prima facie case . . . is an evidentiary standard, not a pleading requirement."); accord Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) ("[N]one of our post-Swierkiewicz cases have required the pleading of specific facts sufficient to establish each and every element of a prima facie case.").  While "the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold," elements of a prima facie case are nonetheless "part of the background against which a plausibility determination should be made."  Rodriguez-Reyes, 711 F.3d at 51, 54.  Ultimately, "[t]he relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render [plaintiff's] entitlement to relief plausible.'"  Id. at 55 (quoting Twombly, 550 U.S. at 569 n.14).

In Massachusetts, a prima facie case of employment discrimination based on disability consists of four elements: that plaintiff "was (1) 'handicapped'; (2) 'capable of performing the essential functions' of the job 'with reasonable

accommodation'; . . . (3) subject to an adverse action by his employer; and (4) the position he had occupied remained open and the employer sought to fill it."  City of New Bedford v. Mass. Comm'n Against Discrimination, 799 N.E.2d 578, 587 (Mass. 2003) (quoting chapter 151B, section 4(16)) (citation omitted).[4]  In determining the first element, i.e., whether the plaintiff is "handicapped," Massachusetts courts apply a three-step analysis and consider whether: (1) the plaintiff's condition constitutes a mental or physical impairment; (2) the plaintiff's life activity curtailed by the impairment constitutes a "major life activity," as defined in chapter 151B, section 1(20); and (3) the impairment substantially limits the major life activity. City of New Bedford, 799 N.E.2d at 588-89.

Defendant argues that the complaint fails to adequately plead disability discrimination because it does not allege facts sufficient to establish the first element of the prima facie case: that plaintiff is "handicapped" as defined in chapter 151B, sections 1(17) and 1(19).  (Docket Entry # 7, p. 5).  More

---

[4]  The current landscape of disability discrimination law in Massachusetts is less than clear, as discussed infra.  Plaintiff contends that Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24 (Mass. 2016), abolished the fourth element of the prima facie case. (Docket Entry # 9, p. 13 n.7).  This is not necessarily correct, and, for purposes of the present discussion as to Count I, immaterial.  Defendant challenges Count I based on the first element (Docket Entry # 7, pp. 5-8) (Docket Entry # 15, pp. 4-5), which is present in all formulations of the prima facie standard.

specifically, defendant contends that the complaint fails to allege that plaintiff's impairment of high blood pressure substantially limits a major life activity.  (Docket Entry # 7, p. 6).

The complaint, however, need not offer facts to establish every element of a prima facie case.  Swierkiewicz, 534 U.S. at 510; Rodriguez-Reyes, 711 F.3d at 51.  Even so, drawing all reasonable inferences in plaintiff's favor, the complaint plausibly alleges that plaintiff has a qualifying handicap.  See Sanders, 843 F.3d at 42.  The determination of whether plaintiff has a disability cannot be examined in a vacuum.  Silver v. City of Alexandria, 470 F. Supp. 3d 616, 621-22 (W.D. La. 2020) (finding that, during COVID-19 pandemic, determination of whether plaintiff has a disability is based on totality of the circumstances, including heightened risks of an impairment caused by pandemic).[5]  The complaint states that plaintiff has a history of high blood pressure (Docket Entry # 1, p. 1, ¶ 6), that this history was made known to defendant (Docket Entry # 1,

---

[5]  While Silver is not binding on this court and relates to a disability finding under the American Disabilities Act, this court agrees with the court in Peeples v. Clinical Support Options, Inc., 487 F. Supp. 3d 56, 63 (D. Mass. 2020), that it is persuasive in "addressing the standard for determining whether an individual has an impairment that substantially limits a major life activity, thus rising to the level of a disability, during this pandemic."  Id.

p. 3, ¶ 12), that plaintiff's high blood pressure made him
vulnerable to COVID-19 (Docket Entry # 1, p. 4, ¶ 22), and that
plaintiff communicated his vulnerability concern to defendant
(Docket Entry # 1, p. 6, ¶ 33).  On these facts, it is
reasonable to infer that, in the context of the COVID-19
pandemic, plaintiff's high blood pressure substantially limited
his ability to work in defendant's office in close proximity to
other people.  See City of New Bedford, 799 N.E.2d at 589;
Silver, 470 F. Supp. 3d at 621-22.  At a later stage of
litigation, the facts may show that plaintiff's condition does
not rise to the level of a "handicap" as defined by the statute,
but for the time being the complaint plausibly alleges that it
does.

In addition to asserting that defendant discriminated
against plaintiff based on his handicap, Count I alleges that
defendant discriminated against him "because of the disability
of someone he is associated with."  (Docket Entry # 1, p. 7, ¶
47).  This claim arises from plaintiff's denied request to work
from home insofar as it was motivated by a desire to protect
plaintiff's mother, who is vulnerable to COVID-19 due to her age
and health conditions.  (Docket Entry # 1, pp. 3, 4, 6, ¶¶ 13,
22, 33).  Defendant contends that such an associational
discrimination claim is not cognizable under Massachusetts law,

relying on Flagg v. Alimed, Inc., 992 N.E.2d 354 (Mass. 2013).
(Docket Entry # 7, p. 9).

Flagg recognized associational discrimination as a valid
cause of action in Massachusetts for the first time.  In Flagg,
the defendant fired the plaintiff to avoid paying for "costly
medical treatment" of the plaintiff's wife.  Flagg, 992 N.E.2d
at 358.  The Massachusetts Supreme Judicial Court found that,
"[w]hen an employer subjects an otherwise satisfactory employee
to adverse employment decisions premised on hostility toward the
handicapped condition of the employee's spouse, it is treating
the employee as if he were handicapped himself. . . ."  Id. at
360.  However, the court expressly declined to consider whether
its rationale extended to employees who seek reasonable
accommodations on account of a family member's disability.  Id.
at 361 n.18 ("[W]e have no occasion to consider whether an
employee with a handicapped spouse himself is entitled to
reasonable accommodation on account of his spouse's condition;
that issue is not raised in this case.").  The concurring
opinion went slightly beyond, stating that "the court's opinion
does not suggest that an employer is required under [chapter
151B] § 4(16) to provide reasonable accommodation to an employee
who is not himself handicapped to allow the employee to attend
to important family matters, medical or otherwise."  Id. at 368
(Gants, J., concurring).

Courts interpreting Flagg have come to different conclusions as to the narrowness of the holding.  Some, adhering to a cue from the late Chief Justice Gants's concurrence, take the position that Flagg bars recovery for associational discrimination claims based on a failure to provide reasonable accommodations.  See Fenn v. Mansfield Bank, Civil Action No. 14-12554-NMG, 2015 WL 628560, at *4 (D. Mass. Feb. 12, 2015). Others extend the case to associational discrimination on bases other than handicap.  See Baer v. Montachusett Reg'l Tech. School Dist., 380 F. Supp. 3d 143, 153-54 (D. Mass. 2019) (gender discrimination); Piccadaci v. Town of Stoughton, Civil Action No. 18-10188-RGS, 2019 WL 653146, at *4 n.11 (D. Mass. Feb. 15, 2019) (race discrimination).

Flagg does not establish a claim for associational discrimination entitling an employee to a reasonable accommodation based on his or her spouse's handicap.  The majority opinion states only that it does not reach that issue. Flagg, 992 N.E.2d at 361 n.18.  The concurrence, in turn, states that the majority opinion "does not suggest" that employers must provide reasonable accommodations to their employees on account of the employees' families.  Id. at 368 (Gants, J., concurring). Because Flagg does not decide the issue one way or the other, nor does any subsequent case, the complaint's associational discrimination claim presents a novel question of law.

Ordinarily, it is not the province of a federal court to decide and extend state law to a novel area.  Doe v. Trustees of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019) ("Federal courts are not free to extend the reach of state law. . . . A litigant who chooses federal court over state court 'cannot expect this court "to . . . blaze new and unprecedented jurisprudential trails"' as to state law.") (citation omitted); Braga v. Genlyte Grp., Inc., 420 F.3d 35, 42 (1st Cir. 2005) ("A federal court sitting in diversity must 'take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts.'" (quoting Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir. 1996))).  Adhering to the cue from the late Chief Justice Gants's concurring opinion, the associational claim is not plausible.[6]

Count I also alleges that defendant failed to offer plaintiff a reasonable accommodation and failed "to engage in the interactive process in any meaningful way when [p]laintiff requested an accommodation."  (Docket Entry # 1, p. 7, ¶¶ 48-49).  To establish that his employer failed to provide him a reasonable accommodation, a plaintiff must show two things. First, "a plaintiff needs to show not only that the proposed

---

[6]   In the event state law evolves in a plaintiff-favorable manner during the pendency of this litigation, plaintiff may seek leave to amend Count I to include the associational claim. The motion to dismiss this claim is therefore without prejudice.

accommodation would enable [him] to perform the essential functions of [his] job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001). Second, he must show that his request for an accommodation is "'sufficiently direct and specific,' giving notice that [he] needs a 'special accommodation.'" Id. at 261 (quoting Wynne v. Tufts Univ., 976 F.2d 791, 795 (1st Cir. 1992)); see also Miceli v. JetBlue Airways Corp., 914 F.3d 73, 82 (1st Cir. 2019) ("For an employee's actions to constitute a request for accommodation, they must make the employer aware that the employee is entitled to and needs accommodation." (citation omitted)). "At the least, the request must explain how the accommodation requested is linked to some disability." Reed, 244 F.3d at 261.

Even if the requested accommodation is not reasonable or suitable, the analysis does not end there. In such instances, the employer "nonetheless 'must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the qualified individual with a disability.'" Miceli, 914 F.3d at 82 (citation omitted); see also E.E.O.C. v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014) ("[A]n employee's request for accommodation sometimes creates 'a duty

on the part of the employer to engage in an interactive process.'" (quoting Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008))).

Plaintiff submitted a request to continue working from home on March 26, 2020. (Docket Entry # 1, p. 4, ¶ 23). Recent experience demonstrated that plaintiff could perform the essential functions of his job while working remotely. (Docket Entry # 1, pp. 3, 6, ¶¶ 16, 34); see Reed, 244 F.3d at 259. Plaintiff's requested accommodation was evidently "feasible for [defendant] under the circumstances" given that defendant created a process for requesting this specific accommodation and later granted the accommodation to two other engineers. (Docket Entry # 1, pp. 4, 5, ¶¶ 21, 28); see Reed, 244 F.3d at 259. While the complaint states that plaintiff wanted to work from home because he was concerned about his and his mother's vulnerability to COVID-19, it is not clear whether plaintiff communicated that concern to his Manager. (Docket Entry # 1, p. 4, ¶ 22); see Reed, 244 F.3d at 261. At the latest, plaintiff communicated his particular concerns to defendant on March 30, 2020, the day before defendant terminated his employment. (Docket Entry # 1, p. 6, ¶ 33). Consequently, it is plausible that plaintiff's request for a specific accommodation – working from home – gave defendant notice that he required a "special accommodation" on account of his medical history. See Reed, 244

17

F.3d at 261; Miceli, 934 F.3d at 82.  Defendant did not attempt
to engage in an interactive process with plaintiff to determine
an appropriate accommodation, but rather prepared to terminate
plaintiff if he did not report to the office.  (Docket Entry #
1, p. 5, ¶ 30); see Miceli, 934 F.3d at 82.  As a result, the
complaint sufficiently pleads claims for failure to provide a
reasonable accommodation and failure to engage in the
interactive process.

II.  Age Discrimination (Count II)

     Defendant argues that that the complaint fails to
"sufficiently plead a prima facie case of age discrimination."
(Docket Entry # 7, p. 11) (emphasis omitted).  Defendant also
submits that the complaint fails to show a causal connection
between plaintiff's age and his termination.  (Docket Entry #
15, pp. 2-5).  As previously noted, establishing a prima facie
case is not a pleading requirement.  Swierkiewicz, 534 U.S. at
510; Rodriguez-Reyes, 711 F.3d at 51.  Instead, the prima facie
case elements are "part of the background against which a
plausibility determination should be made."  Rodriguez-Reyes,
711 F.3d at 54.

     The current state of the prima facie elements in
Massachusetts discrimination law is less than clear, with at
least three competing formulations.  The first requires the
plaintiff to show that "(1) he is a member of a class protected

by [chapter] 151B; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiff's position by hiring another individual with qualifications similar to the plaintiff's." Blare v. Husky Injection Sys. Molding Bos., Inc., 646 N.E.2d 111, 115 (Mass. 1995); see also Ethier v. Thrive Operations, LLC, Civil Action No. 18-12154-RGS, 2020 WL 2490028, at *6 (D. Mass. May 14, 2020) (applying four-prong standard); Knight v. Avon Prods., Inc., 780 N.E.2d 1255, 1264 (Mass. 2003) (holding that, to establish fourth prong in age discrimination case, replacement employee must be at least five years younger).  Defendant cites to this formulation.  (Docket Entry # 7, p. 11).

The second formulation comes from Bulwer v. Mount Auburn Hosp., 46 N.E. 3d 24 (Mass. 2016).  This formulation is identical to the first except that it excludes the fourth element regarding the plaintiff's replacement.  Id. at 32-33 (quoting Blare, 646 N.E.2d at 115).  Curiously, Bulwer quotes the elements directly from Blare but offers no explanation as to why the fourth element is missing.  Plaintiff contends that Bulwer represents an updated prima facie standard that has done away with the requirement that a plaintiff show that his employer sought to fill his position with someone else of substantially similar qualifications.  (Docket Entry # 9, p. 13 n.7).  Cases decided after Bulwer, however, hesitate to adopt

19

this position.  See Gordon v. EarthLink, Inc., Civil Action No.
14-14145-FDS, 2017 WL 3203385, at *7 n.8 (D. Mass. July 27,
2017) (emphasis altered) ("Bulwer provides no explanation for
the missing fourth element. . . . [W]hether the fourth element
is included here makes no difference, as the Court will assume
for purposes of summary judgment that plaintiffs have satisfied
their prima facie burdens."); Massasoit Indus. Corp. v. Mass.
Comm'n Against Discrimination, 73 N.E.3d 333, 337 n.4 (Mass.
App. Ct. 2017) ("The distinction [of the missing fourth element]
is not material to the outcome in this case, because it is
undisputed that [the former employee] was replaced by a younger
individual.").  But see Henry v. Sterling Collision Ctrs., Inc.,
252 F. Supp. 3d 42, 48 (D. Mass. 2017) (adopting elements from
Bulwer).

The third formulation sets out a different set of four
elements derived from chapter 151B, section 4(1): "membership in
a protected class, harm, discriminatory animus, and causation."
Lipchitz v. Raytheon Co., 751 N.E.2d 360, 368 (Mass. 2001).
Recent cases apply this framework in discrimination cases based
on age, race, gender, and disability.  See, e.g., Audette v.
Town of Plymouth, 858 F.3d 13, 23 (1st Cir. 2017) (disability);
Cadigan v. Align Tech., Inc., Civil Action No. 19-11462-ADB,
2020 WL 3799191, at *7 (D. Mass. July 7, 2020) (age and gender);

Charles v. Leo, 135 N.E.3d 252, 260 (Mass. App. Ct. 2019)
(race).

Amidst the confusion, the complaint sets forth facts that,
taken as true, establish every element of the second prima facie
case formulation. The complaint states that plaintiff is 55
years old (Docket Entry # 1, p. 1, ¶ 6), thus establishing that
he is a member of a protected class. See Mass. Gen. Laws ch.
151B, § 1(8) (defining "age" as "any duration of time since an
individual's birth of greater than forty years"); Bulwer, 46
N.E.3d at 32-33. Plaintiff performed his job more than
adequately throughout his employment with defendant, receiving
positive performance reviews without exception. (Docket Entry #
1, p. 2, ¶ 11); see Bulwer, 46 N.E.3d at 33. Finally, defendant
terminated plaintiff's employment. (Docket Entry # 1, p. 6, ¶
35); see Bulwer, 46 N.E.3d at 33. These same facts are also
sufficient to establish three of four elements in the first
formulation, see Blare, 646 N.E.2d at 115 (protected class,
acceptable job performance, and termination), and two of four
elements in the third formulation. See Lipchitz, 751 N.E.2d at
368 (protected class and harm).

The complaint also alleges that defendant terminated
plaintiff because of his vulnerability to COVID-19 and his
related request to work from home. Plaintiff's age is one
factor that allegedly renders him vulnerable to COVID-19, which

plaintiff pointed out to defendant on at least one occasion.
(Docket Entry # 1, p. 6, ¶ 33) ("Plaintiff reiterated the
reasons for his request to work from home, namely that he was
55-years-old with a long-time high blood pressure medical
problem."). If defendant discriminated against plaintiff on
account of his vulnerability to COVID-19, and plaintiff's age is
part of his vulnerability, then it is plausible that defendant
discriminated against plaintiff based, at least in part, on his
age. See Higgins v. State St. Corp., 323 F. Supp. 3d 203, 207
(D. Mass. 2018) (requiring that the plaintiff, to state a
plausible claim for age discrimination, allege a causal
connection between his failure to obtain an interview and his
age). As such, and using the previously described prima facie
showing as background, the complaint sets out a plausible claim
of age discrimination.

III.  Race/National Origin Discrimination (Count III)

Defendant argues that Count III fails for essentially the
same reasons as Count II, namely that it does not set forth
sufficient facts to establish a prima facie case of
discrimination on the basis of race or national origin, and that
there is no indication that plaintiff's "termination was in any
way related to his Chinese descent." (Docket Entry # 7, p. 12)
(Docket Entry # 15, p. 4). Again, a prima facie case is not the
pleading standard. Swierkiewicz, 534 U.S. at 510. The

complaint need not plead "specific facts sufficient to establish each and every element of a prima facie case." Rodriguez-Reyes, 711 F.3d at 54.  Even so, the complaint sets out every element of a prima facie case under the Bulwer standard.

The complaint states that plaintiff is Chinese-American, thus identifying him as a member of a protected class.  (Docket Entry # 1, p. 1, ¶ 6); see Mass. Gen. Laws. ch. 151B, § 4. Plaintiff performed his job more than adequately.  (Docket Entry # 1, p. 2, ¶ 11); see Bulwer 46 N.E.3d at 33.  Nonetheless, defendant terminated plaintiff's employment.  (Docket Entry # 1, p. 6, ¶ 35); see Bulwer, 46 N.E.3d at 33.

Where plaintiff's race or national origin discrimination claim differs from the age discrimination claim is that he does not allege that his race is in any way related to his vulnerability to COVID-19.  The complaint contains just two references to plaintiff's race: the first simply states that plaintiff is Chinese-American (Docket Entry # 1, p. 1, ¶ 6), while the second alleges that "[d]efendant discriminated against [p]laintiff because of his race/national origin."  (Docket Entry # 1, p. 8, ¶ 57).  The latter is a legal conclusion and thus not entitled to consideration.  See Iqbal, 556 U.S. at 678; Dixon, 522 F.3d at 79.  There is nothing in the complaint to suggest that defendant terminated plaintiff because of his race or national origin.  See Higgins, 323 F. Supp. 3d at 207.  In his

opposition, plaintiff does not point to any facts in the complaint, but rather repeats that plaintiff is Chinese-American, represents that defendant is "a primarily white employer," and then relies on a general increase in anti-Chinese sentiment in the United States during the relevant period. (Docket Entry # 9, pp. 14-15).

Generalized assertions of societal racism and employer demographics cannot substitute for insufficient facts in the complaint.  Because the complaint fails to set forth any facts implying a plausible connection between plaintiff's race and his termination, it fails to state a plausible claim for discrimination on the basis of race or national origin.

<u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss (Docket Entry # 6) is: **DENIED** as to Count I, except for the associational discrimination claim, which is dismissed without prejudice; **DENIED** as to Count II; and **ALLOWED** as to Count III.


          __/s/ Marianne B. Bowler_____
          **MARIANNE B. BOWLER**
          United States Magistrate Judge